**Michael S. BLACKHURST, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1090.**

Court of Appeals of Alaska.

June 27, 1986.

Jeffrey K. Rubin and Richard H. Friedman, Royce, Wollenberg & Friedman, Sitka, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

BRYNER, Chief Judge.

Michael Blackhurst was indicted for murder in the second degree. AS 11.41.-110(a)(1). Following a jury trial, he was convicted of the lesser-included offense of manslaughter. AS 11.41.120(a)(1). He appeals, contending that the trial court erred in instructing the jury, over his objection, on manslaughter as a lesser-included offense of second-degree murder. We conclude that the trial court did not err in giving the lesser-included offense instruction.

In early June, 1984, Blackhurst was hired by Victor Lane as the sole deckhand on the JENNY, a salmon troller owned and operated by Lane in Sitka. By mid-June, Lane became dissatisfied with Blackhurst and decided to fire him. Lane told Blackhurst that he was going to replace him at

the end of June with a female deckhand. This caused the working relationship between Blackhurst and Lane to deteriorate.

On June 29, 1984, after a day of fishing, Lane and Blackhurst anchored the JENNY in Gilmore Bay. That evening, Cindy Windle, who was fishing on the SWAN, also pulled into Gilmore Bay. She noticed that two men aboard the JENNY were "kind of wrestling around." Later that same evening, other fishermen saw the JENNY pull anchor and depart. They thought it odd that the JENNY took a short-cut never used by other fishermen, including Lane. One of the fishermen radioed the JENNY to find out what was wrong but got no response.

On the morning of June 30, at approximately 1:00 a.m., the Coast Guard received a "mayday" call from the JENNY. The Coast Guard dispatched a helicopter and located the JENNY at approximately 3:30 a.m. Corporal Robert Lester, a Fish and Wildlife Protection Officer, was hoisted aboard the JENNY. He found Blackhurst standing next to the galley table. A search of the boat failed to locate Lane. Lester piloted the boat back to Sitka.

During the voyage, Blackhurst attempted to explain Lane's absence to Lester. Blackhurst said that, on the previous day, he cut his hand on a cable while fishing and wanted to return to Sitka for treatment. According to Blackhurst, however, Lane wanted to fish one more day and anchored the JENNY in Gilmore Bay. Blackhurst said that he went to sleep, awoke around midnight, and realized that the boat was in open water. Unable to find Lane, he made the "mayday" call. Blackhurst later related the same story to Corporal Brad Brown, who joined Blackhurst and Lester aboard the JENNY for the trip to Sitka.

In Sitka, Blackhurst was taken to the medical clinic, where he was treated for the cut on his hand. He told the doctor and the nurse that he cut his hand on a fishing cable. The doctor, however, observed that the cut was clean, which was consistent with it having been inflicted by a knife.

On July 3, 4, and 9, the JENNY was thoroughly searched by Alaska State Troopers. A large amount of blood, inconsistent with a hand wound, was found. Tests indicated that the blood was type "B" positive. Blackhurst had "O" negative. Further investigation revealed that Lane's sleeping bag and a .22 caliber revolver were missing.

On July 13, Troopers McCoy and Holland conducted a taped interview with Blackhurst. Initially, Blackhurst told the troopers that he and Lane had argued over returning to Sitka to have his hand treated and that Lane decided to fish one more day. Blackhurst admitted having a brief scuffle with Lane but said that Lane did not attack him with a knife or threaten him in any manner. Later, however, Blackhurst acknowledged that he had told Lane he was tired of fishing and wanted to go home. Blackhurst claimed that Lane held him on board against his will.

Subsequently, Troopers McCoy and Holland told Blackhurst that his cut appeared too clean to have been caused by a cable. They said they were suspicious of his story. Blackhurst then related yet another version of the incident. He said Lane had found out that Blackhurst had slept with Lane's girlfriend and that, later, he and Lane got into a yelling match over Blackhurst's cut hand. Blackhurst said that Lane "went crazy" and went after him with a knife. Blackhurst claimed that he then shot Lane in self-defense.

Still later, however, Blackhurst said that his hand was cut during the fight with Lane, when he tried to grab the knife away from Lane. Blackhurst claimed that, after his hand was cut, he ran into the wheelhouse and Lane followed him, still wielding the knife. According to Blackhurst, once inside the wheelhouse, he grabbed the .22 caliber revolver from behind the steering wheel and shot Lane three times: he fired the first shot from a distance of about four feet and hit Lane in the face; he hit Lane in the chest with the second shot, and Lane fell, still clutching the knife; he then shot Lane a third time, point-blank, hitting him

in the face. Blackhurst stated that he shot Lane because he thought Lane was going to kill him. He also said he shot Lane because he "panicked," "wasn't thinking," and "was in shock." Blackhurst also acknowledged that he might have had an opportunity to jump overboard before shooting Lane, but he said he did not think of it at the time.

Blackhurst was subsequently charged with murder in the second degree. During pretrial hearings, the state consistently represented that the only issue in this case was whether the killing was justified. The state also referred to Blackhurst's anger over having his job terminated, which, according to the prosecution's theory, "[put] him over the edge."

At trial, Blackhurst claimed self-defense. He asserted the defense through his counsel's opening and closing statements and through his taped interview with Troopers McCoy and Holland, which was introduced into evidence during the state's case-in-chief. At the close of trial, the court instructed the jury on murder in the second degree[1], and on self-defense.[2] Additionally, at the state's request and over Blackhurst's objection, the court instructed the jury that it could consider convicting Blackhurst of the lesser-included offense of manslaughter[3] if it found that Blackhurst acted out of heat of passion[4] rather than in self-defense. In allowing the manslaughter instruction, the trial court concluded that there was sufficient evidence to allow the jury to find that Blackhurst might have acted out of heat of passion after being provoked by Lane. The trial court reasoned that the jury should be permitted to consider heat of passion manslaughter in the event it elected to reject Blackhurst's claim of self-defense.

On appeal, Blackhurst claims that it was error for the trial court to instruct the jury on heat of passion manslaughter. The threshold question presented by Blackhurst's argument is whether heat of passion manslaughter is a lesser-included of-

---

**1.** Alaska Statute 11.41.110(a)(1) reads in pertinent part:

(a) A person commits the crime of murder in the second degree if

(1) with intent to cause serious physical injury to another person or knowing that the conduct is substantially certain to cause death or serious physical injury to another person, the person causes the death of any person. ...

**2.** Alaska Statute 11.81.335 provides in pertinent part:

*Justification: Use of deadly force in defense of self.* (a) Except as provided in (b) of this section, a person may use deadly force upon another person when and to the extent

(1) the use of nondeadly force is justified under AS 11.81.330; and

(2) the person reasonably believes the use of deadly force is necessary for self defense against death, serious physical injury, kidnapping, sexual assault in the first degree under AS 11.41.410(a)(1) or (2), sexual assault in the second degree, or robbery in any degree.

(b) A person may not use deadly force under this section if the person knows that, with complete personal safety and with complete safety as to others, the person can avoid the necessity of using deadly force by retreating. ...

**3.** Alaska Statute 11.41.120(a)(1) provides in pertinent part:

(a) A person commits the crime of manslaughter if the person

(1) intentionally, knowingly, or recklessly causes the death of another person under circumstances not amounting to murder in the first or second degree. ...

**4.** Alaska Statute 11.41.115 provides in pertinent part:

(a) In a prosecution under AS 11.41.100(a)(1) or 11.41.110(a)(1), it is a defense that the defendant acted in a heat of passion, before there had been a reasonable opportunity for the passion to cool, when the heat of passion resulted from a serious provocation by the intended victim.

.    .    .    .    .

(e) Nothing in (a) or (b) of this section precludes a prosecution for or conviction of manslaughter or any other crime not specifically precluded.

(f) In this section,

.    .    .    .    .

(2) "serious provocation" means conduct which is sufficient to excite an intense passion in a reasonable person in the defendant's situation, other than a person who is intoxicated, under the circumstances as the defendant reasonably believed them to be; insulting words, insulting gestures, or hearsay reports of conduct engaged in by the intended victim do not, alone or in combination with each other, constitute serious provocation.

fense of second-degree murder. Lesser-included offenses are governed by Alaska Criminal Rule 31(c), which provides:

*Conviction of Lesser Offense.* The defendant may be found guilty of an offense necessarily included in the offense charged, or of an attempt to commit either the offense charged or the offense necessarily included therein if the attempt is an offense. When it appears that the defendant has committed a crime, and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of those degrees only.

Alaska courts have rejected the strict statutory elements approach to lesser-included offense instructions and have applied the broader cognate approach. *See Elisovsky v. State,* 592 P.2d 1221, 1225–26 (Alaska 1979); *Wilson v. State,* 670 P.2d 1149, 1151 (Alaska App.1983); *Marker v. State,* 692 P.2d 977, 980 (Alaska App.1984).

■ Under the cognate approach, the court must examine the elements of the offense, the respective theories of the case, and the evidence presented at trial. *Norbert v. State,* 718 P.2d 160, 162–63 (Alaska App.1986). The court must then determine whether, in the context of the case, it would be possible for the jury to find that the accused had committed the greater offense but not the lesser. *Id. See also Rivett v. State,* 578 P.2d 946, 947 (Alaska 1978). If a finding of guilt on the greater offense would be inconsistent with acquittal on the lesser, and there is a disputed element that distinguishes the greater from the lesser, an instruction on the lesser must be given. *Rice v. State,* 589 P.2d 419, 420 (Alaska 1979); *Marker v. State,* 692 P.2d at 980.

At trial, Blackhurst conceded that all of the statutory elements of murder in the second degree had been established by the state's evidence. He relied exclusively on the theory of self-defense. On appeal, he contends that, because no element distinguishing the greater offense from the lesser was actually disputed, the manslaughter instruction was improper. We disagree.

When Blackhurst raised the issue of self-defense, justification became a disputed factual element that the state was required to disprove beyond a reasonable doubt. Under the revised Alaska Criminal Code, self-defense is included among the various forms of conduct falling under the broad heading of justification. *See* AS 11.81.300–11.81.450. With the exception of duress and entrapment, conduct amounting to justification is classified in the revised code as a defense. *See* AS 11.81.300. Under AS 11.81.900(b)(15), defense is defined as follows:

(15) "defense" other than an affirmative defense, means that

(A) some evidence must be admitted which places in issue the defense; and

(B) the state then has the burden of disproving the existence of the defense beyond a reasonable doubt. ....

The statutory treatment of justification as a defense is reflected in the Alaska Pattern Jury Instruction For Murder in the Second Degree, which was appropriately given in Blackhurst's case:

A person commits the crime of murder in the second degree if, *without justification,* and with intent to cause serious physical injury to another person. ... [Emphasis added.]

In seeking to meet its burden of disproving justification, the state attempted to show, *inter alia,* that if Blackhurst believed deadly force was necessary, his belief was not reasonable. The state's evidence included Blackhurst's own admissions that, at the time he shot Lane, he "panicked," "was in shock," "wasn't thinking," and might have had the opportunity to retreat by jumping overboard. These admissions were part of the same interview that Blackhurst relied on as a basis for his claim of self-defense.

While these admissions tended to disprove Blackhurst's claim of self-defense, they also arguably tended to show, in conjunction with other evidence, that Blackhurst might have acted in the heat of passion, after being seriously provoked by

Lane. Other evidence supporting this theory included Cindy Windle's testimony that, on the evening of the killing, she saw two men aboard the JENNY "kind of wrestling around," testimony from other fishermen indicating a growing dissension between Blackhurst and Lane, and Blackhurst's statement that, moments before the killing, he and Lane had an argument that erupted into a fight in which Lane cut Blackhurst's hand.

■ Considering the evidence presented at trial, then, it is apparent that the issue of justification was disputed. In support of the second-degree murder charge, the prosecution maintained that Blackhurst's conduct was entirely unjustified. As a fall-back position, the state sought to show that, at most, the conduct was partially justified as an act committed in the heat of passion. Blackhurst, on the other hand, maintained that his conduct was fully justified as an act of self-defense. Given the evidence presented at trial, a jury might well have decided that Blackhurst did not reasonably believe that it was necessary to use deadly force against Lane in self-defense. The jury might nonetheless have entertained reasonable doubt as to whether Blackhurst had been seriously provoked by Lane and had killed him in the heat of passion. *See Kirby v. State*, 649 P.2d 963, 969 (Alaska App.1982).

■ Because Blackhurst's claim of self-defense was predicated exclusively on the theory that Lane had attacked Blackhurst with a knife, the jury could not rationally have found that Blackhurst acted in self-defense without also finding that he had been seriously provoked by Lane.[5] Since justification was a disputed factual element distinguishing second-degree murder from manslaughter, the manslaughter charge was properly determined to be a lesser-included offense of the murder charge under the cognate approach.[6]

It remains to be determined whether the lesser-included offense instruction could properly be given over Blackhurst's objection. Although the issue seems to be one of first impression in Alaska, it is well settled under federal law that a lesser-included offense instruction may properly be requested by either the defense or the prosecution. When the prosecution requests such an instruction, the trial court must ensure that the defendant receives adequate notice that the greater offense charged in the particular case included the possibility of conviction on the uncharged lesser offense. *See United States v. Stolarz*, 550 F.2d 488, 492 (9th Cir.) *cert. denied*, 434 U.S. 851, 98 S.Ct. 162, 54 L.Ed.2d 119 (1977); *United States v. Whitaker*, 447 F.2d 314, 320–21 (D.C.Cir.1971).

In determining whether Blackhurst had adequate notice that heat of passion manslaughter might be a lesser-included offense of second degree murder, we find the approach used in *United States v. Stolarz* to be helpful. In that case, the defendant was charged with assault with intent to commit murder. Over the defendant's objection, the trial court instructed the jury on the lesser-included offense of assault

---

5. Sufficient provocation to raise heat of passion includes, *inter alia*, a sudden angry quarrel, mutual combat, and assault or battery. W. LaFave & A. Scott, *Criminal Law* § 76, at 574–75 (1972).

6. In connection with his lesser-included offense argument, Blackhurst specifically contends that, by giving the heat of passion manslaughter instruction over his objection, his right to due process was violated under both the federal and Alaska Constitutions because he was, in effect, tried and convicted of charges not present in the indictment. *See, e.g.,* Stirone v. United States, 361 U.S. 212, 217, 80 S.Ct. 210, 213, 4 L.Ed.2d 252, 256 (1960).

Our finding that manslaughter was a lesser-included offense leads us to conclude that there was no factual variance between the offense charged in the indictment and the offense for which Blackhurst was convicted. *See* Paterno v. Lyons, 334 U.S. 314, 68 S.Ct. 1044, 92 L.Ed. 1409 (1948). *Cf.* Alto v. State, 565 P.2d 492, 495 (Alaska 1977) (rape conviction set aside where indictment charged defendant with murder committed in the attempt to perpetrate a rape). Given the evidence presented at trial and the issue of justification, we also conclude that the record does not support Blackhurst's assertion that the jury must have reached a compromised verdict. *See* United States v. Harary, 457 F.2d 471, 478–79 (2d Cir.1972).

with a dangerous weapon with intent to do bodily harm. The jury acquitted the defendant on the greater offense and convicted him on the lesser. In affirming the conviction, the Ninth Circuit Court of Appeals noted that "[a]ny defense attorney is on notice that a lesser-included offense instruction may be given pursuant to [Criminal] Rule 31(c)." [7] 550 F.2d at 492. The court further noted that the defense was on notice of similarities in the statutory definition of the two offenses, and of their close and logical relationship. *Id.*

In the present case, Blackhurst had ample notice that a lesser-included offense instruction on heat of passion manslaughter might have been requested. He was charged with murder in the second degree, in violation of AS 11.41.110(a)(1). The statutory provisions governing the heat of passion defense, AS 11.41.115(a), and the offense of manslaughter, AS 11.41.120(a)(1), directly follow the second-degree murder statute. Prior to Blackhurst's trial, this court had expressly held, under similar circumstances, that heat of passion manslaughter could constitute a lesser-included offense of second degree murder. *See Kirby v. State*, 649 P.2d at 969. The status of manslaughter as a potential lesser-included offense of second-degree murder was therefore predictable.

Moreover, there is little possibility here that an instruction on the lesser-included offense worked unfair surprise on Blackhurst. The state's heat of passion theory was based on evidence that Blackhurst was aware of before trial. Blackhurst was clearly able to anticipate the admission of this evidence. In fact, the bulk of the evidence supporting the state's theory of heat of passion was precisely the same evidence Blackhurst relied on to support his claim of self-defense—his interview with the Alaska State Troopers. Prior to trial, Blackhurst urged that his tape recorded interview be admitted, so that he could present his self-defense theory to the jury without taking the stand. The court granted this request, and the interview was presented during the state's case-in-chief.

In short, Blackhurst elected to rely on self-defense; he should thus have been aware that the issue of justification would be disputed at trial. Depending on the jury's assessment of the reasonableness of Blackhurst's conduct, the evidence at trial could have supported either Blackhurst's self-defense claim or the state's heat of passion theory. Considering the close and logical relationship of the greater and lesser offenses in this case, and considering the fact that the self-defense and heat of passion theories were both to a large extent supported by the same evidence, we conclude that Blackhurst had adequate notice that heat of passion manslaughter might be considered a lesser-included offense of second-degree murder. *See United States v. Stolarz*, 550 F.2d at 492.[8]

The conviction is AFFIRMED.

---

7. Federal Rule 31(c) is substantially identical to Alaska Criminal Rule 31(c).

8. Our analysis also leads us to conclude that Blackhurst's due process right to present a defense was not impermissibly invaded. *See* United ed States v. Raborn, 575 F.2d 688, 691 (9th Cir.1978); United States v. Stolarz, 550 F.2d 488, 493 (9th Cir.), *cert. denied*, 434 U.S. 851, 98 S.Ct. 162, 54 L.Ed.2d 119 (1977).