**Carl LaPIERRE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–937.**

Court of Appeals of Alaska.

March 27, 1987.

---

David J. Schmid and David Gorman, Kay, Saville, Coffey, Hopwood & Schmid, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

### OPINION

BRYNER, Chief Judge.

Carl LaPierre was convicted by a jury of one count of first-degree murder and one count of second-degree murder. *See* AS 11.41.100, AS 11.41.110. Superior Court Judge Christopher R. Cooke sentenced LaPierre to consecutive terms of ninety-nine years for the crimes. LaPierre appeals, contending that the trial court erred in refusing to instruct the jury on the defense of heat of passion, in permitting the prosecution to impeach LaPierre by evidence of a conviction that had been entered against him more than five years previously, and in declining to grant a new trial based on ineffective assistance of counsel. LaPierre also challenges his sentence as excessive. We reverse in part and remand for further proceedings.

Shortly after midnight on the night of August 14–15, 1984, Carl LaPierre took a taxi to the Kuskokwim Inn, in Bethel, to buy a pack of cigarettes. LaPierre carried a small pistol in his coat pocket. At the cigarette machine in the Kuskokwim Inn, LaPierre encountered Roxanne Dakutak. Dakutak was intoxicated and was wearing a short T-shirt, which apparently revealed part of her brassiere. As Dakutak bent over to retrieve a pack of cigarettes from the machine, LaPierre touched the bottom of her shirt and commented that she was "hanging out." Angered by the remark,

Dakutak argued briefly with LaPierre and went outside, where she complained to two companions, Michael Snow and Bobby Fox. Snow and Fox were also intoxicated.

As LaPierre left the Kuskokwim Inn, he was immediately accosted by Dakutak, Snow and Fox. Snow pushed LaPierre, wanting to fight. However, LaPierre's taxi driver told Snow to leave LaPierre alone, and LaPierre managed to enter the cab without further incident. LaPierre instructed the driver to take him to the Wild Goose Inn.

As LaPierre emerged from the taxi at the Wild Goose Inn, he was again accosted by Dakutak, Snow and Fox, who had apparently followed LaPierre's taxi from the Kuskokwim Inn. Snow grabbed LaPierre's coat and tried to maneuver him toward an isolated area behind the Wild Goose Inn. LaPierre backed away and asked Snow to leave him alone. Snow advanced and began trying to strike LaPierre, who warded off Snow's blows with his arms.

For several minutes, Snow—still accompanied by Dakutak and also apparently by Fox—continued to pursue LaPierre in this manner, circling around the parking area in front of the Wild Goose Inn. LaPierre repeatedly asked Snow to leave him alone and continued to ward off the blows Snow attempted to strike. Suddenly, Dakutak ran at LaPierre from the side and struck him in the face with her fist, bloodying his nose. She then told Snow that that was enough, but Snow persisted in advancing on LaPierre. Once again, LaPierre told Snow to leave him alone. When his request went unheeded, LaPierre fired four shots at Snow. Snow fell to the ground, and Dakutak knelt momentarily beside him. As Dakutak stood up, LaPierre fired once at her. Snow and Dakutak both died from the shots fired by LaPierre.

LaPierre was tried before a jury in Bethel for two counts of first-degree murder. His primary defense was self-defense. As an alternative, LaPierre attempted to argue that he had acted in the heat of passion and was thus, at most, guilty of manslaughter. The trial court, however, declined to instruct the jury on the heat of passion defense, ruling that there was insufficient evidence to raise the issue. The jury convicted LaPierre of first-degree murder as to Dakutak and of the lesser offense of second-degree murder as to Snow.

LaPierre contends that the trial court's refusal to instruct the jury on heat of passion amounted to error. The heat of passion defense is governed by AS 11.41.115, which provides, in relevant part:

> *Defenses to Murder.* (a) In a prosecution under AS 11.41.100(a)(1) [first-degree murder] or 11.41.110(a)(1) [second-degree murder], it is a defense that the defendant acted in a heat of passion, before there had been a reasonable opportunity for the passion to cool, when the heat of passion resulted from a serious provocation by the intended victim.
>
> . . . .
>
> (f) In this section,
>
> . . . .
>
> (2) "serious provocation" means conduct which is sufficient to excite an intense passion in a reasonable person in the defendant's situation, other than a person who is intoxicated, under the circumstances as the defendant reasonably believed them to be; insulting words, insulting gestures, or hearsay reports of conduct engaged in by the intended victim do not, alone or in combination with each other, constitute serious provocation.

The narrow issue presented here is whether LaPierre produced sufficient evidence to place this defense in issue. Under AS 11.-81.900(b)(15), the state bears the burden of disproving heat of passion once the accused has presented "some evidence" on the issue:

> "defense" other than an affirmative defense, means that
>
> (A) some evidence must be admitted which places in issue the defense; and
>
> (B) the state then has the burden of disproving the existence of the defense beyond a reasonable doubt.

*See also LaLonde v. State,* 614 P.2d 808, 810 (Alaska 1980); *Martin v. State,* 664 P.2d 612 (Alaska App.1983), *cert. denied,*

465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 234 (1984).

The initial burden imposed on the accused by the "some evidence" test is not a heavy one. An identical standard applies to the defense of self-defense, and it is in that context that we have most frequently addressed it. In *Paul v. State*, 655 P.2d 772, 775 (Alaska App.1982) (citation and footnote omitted), for example, we said:

> The burden to produce some evidence of self-defense is not ... a heavy one; this standard is satisfied when self-defense has fairly been called into issue.... A jury question will be presented and an instruction required if the evidence, when viewed in the light most favorable to the accused, might arguably lead a juror to entertain a reasonable doubt as to the defendant's guilt.

*Accord David v. State*, 698 P.2d 1233 (Alaska App.1985); *Folger v. State*, 648 P.2d 111 (Alaska App.1982). In applying the some evidence test, neither the credibility of conflicting witnesses nor the plausibility of the accused's version is considered. *Toomey v. State*, 581 P.2d 1124, 1126 n. 6, 10 (Alaska 1978). So long as some evidence is presented to support the defense, matters of credibility are properly left for the jury. *Paul v. State*, 655 P.2d at 775–76.

In the present case, we find that sufficient evidence was presented to place the defense of heat of passion in issue. LaPierre, through his own testimony and the testimony of supporting witnesses, claimed that he had been pursued to the Wild Goose Inn, where Dakutak, Snow and Fox surrounded him. Their apparent intent was to force him to an isolated area away from the inn. According to LaPierre, Dakutak, Snow and Fox pursued him around the area in front of the Wild Goose Inn for more than five minutes, cutting off all avenues of escape. LaPierre claimed that, during this time, he was forced to fend off with his arms repeated blows by Snow. Prior to the shooting, Dakutak attacked LaPierre suddenly, striking him in the face and bloodying his nose. LaPierre testified that even though Dakutak, after hitting LaPierre, told Snow to leave LaPierre alone, Snow continued to advance on LaPierre. According to LaPierre, when Snow failed to heed Dakutak's advice and continued to pursue LaPierre, Dakutak rejoined Snow.

LaPierre further testified that at the time of the shooting he had lost track of Fox and feared that Fox had managed to slip around behind him. In both his pretrial interview with the police and his trial testimony, LaPierre insisted that he was frightened when he began to shoot. Although LaPierre said he did not know exactly what Dakutak, Snow and Fox intended to do if they succeeded in getting him to an isolated area, he made it clear that he feared that the consequences would be substantially more serious than the bloody nose he had already suffered. At one point in his statement to the police, which was admitted into evidence at trial, LaPierre implied that he had feared for his life.[1]

The explanation given by LaPierre for firing four times at Snow was that Snow continued to advance until the fourth shot was fired. LaPierre explained that he fired at Dakutak after shooting Snow because Dakutak rushed suddenly toward him, in an apparent effort to gouge out his eyes with her fingernails.

While many of LaPierre's factual assertions were disputed and much of his testimony impeached, the critical inquiry is whether there was some evidence of heat of passion. As we have already indicated, the plausibility and credibility of LaPierre's

---

1. LaPierre was questioned about the shooting by Bethel Police Chief Varnell. In relevant part, the interview went as follows:

   V: (Varnell) If you had it to do all over again, Carl, would you have done it again? Would you do it again? ... What would you have done differently? ... I mean, both of the people are dead. What would you have done differently?

   L: (LaPierre) I don't know, I'd be dead, that's for sure.
   V: Uhm, hmm. I don't think anybody was intending to kill you ...
   L: I don't know ...
   V: I think at the most uh ...
   L: I don't know what the hell they were doing.

version are irrelevant to this inquiry. When viewed, as it must be, in the light most favorable to the defense, the evidence presented on behalf of LaPierre "might arguably lead a juror to entertain a reasonable doubt" in determining whether LaPierre acted out of extreme fear or panic as the result of serious provocation by the victims.

In reaching this conclusion, we reject two findings implicitly reached by the trial court. First, Judge Cooke appears to have believed that the heat of passion defense requires evidence that the accused acted out of uncontrollable rage or anger, rather than out of fear. This belief is unwarranted. Nothing in the language of AS 11.41.-110(a) restricts the heat of passion defense to a particular type of passion, such as anger or rage. As commonly defined, "passion" is sufficiently broad to encompass a range of emotions including fear.[2] In the absence of specific, narrowing statutes, cases addressing the heat of passion defense appear to adopt the broad definition of the word. Thus, LaFave notes that:

> The "passion" (emotional disturbance) involved in the crime of voluntary manslaughter is generally rage (great anger); but some cases have pointed out that other intense emotions—such as fright or terror or "wild desperation"—will do.

W. LaFave and A. Scott, *Substantive Criminal Law* § 7–10(A) at 255 (1984) (footnotes omitted). *See also Wood v. State*, 486 P.2d 750, 752 (Okla.Crim.App. 1971). Moreover, in *Blackhurst v. State*, 721 P.2d 645 (Alaska App.1986), a murder case in which the accused argued self-defense by claiming that the victim had attacked him with a knife, we expressly held

that the evidence presented on the issue of self-defense was also sufficient to raise the issue of heat of passion. We conclude, then, that LaPierre's claim that he acted out of fear, rather than out of anger, did not preclude his reliance on the heat of passion defense. *See also Kirby v. State*, 649 P.2d 963, 969 (Alaska App.1982).

Second, it appears that the trial court may have been under the impression that heat of passion was not raised because LaPierre never expressly claimed to have been overwhelmed by any particular emotion, including fear, at the time of the shooting. It is true that LaPierre did not explicitly claim to have been overwhelmed by fear. He did not dwell in his testimony on the extent to which his conduct was influenced by his emotional state. This is perhaps understandable, given LaPierre's decision to rely primarily on self-defense, a complete defense to the charges against him. Nevertheless, LaPierre repeatedly asserted that he was frightened by the conduct of Dakutak, Snow and Fox and that he did not know what to do. The extent of LaPierre's fear, and the influence of the fear on LaPierre's conduct were clearly matters that could be inferred from other evidence concerning the circumstances surrounding the shootings. So long as the totality of the circumstances might fairly have given rise to an inference of heat of passion, it was not necessary for LaPierre to claim explicitly that he had been overwhelmed with fear. *See Kirby v. State*, 649 P.2d at 969. *See also Weston v. State*, 682 P.2d 1119, 1122 (Alaska 1984).

■ We thus hold that the trial court erred in denying LaPierre's request for a heat of passion instruction.[3] While rever-

---

**2.** Webster's New World Dictionary (2nd College Edition 1980) defines "passion", apart from its religious connotation, to include "any one of the emotions, as hate, grief, love, fear, joy, etc...."

**3.** On appeal, the state advances two new theories, neither of which was relied on by the trial court. The state argues for application of a rule akin to the "initial aggressor" rule, which precludes self-defense from being raised where the accused was the initial aggressor. *See, e.g., Bangs v. State*, 608 P.2d 1, 5 (Alaska 1980). The state's theory is that LaPierre should be foreclosed from arguing that he was provoked to a

heat of passion because it was LaPierre who initially provoked Dakutak. Assuming the state's argument has legal merit in the abstract, it is factually unpersuasive in the present case. The evidence, when viewed in its most favorable light, would indicate that, apart from a sexual remark and a momentary touching of Dakutak's shirt, LaPierre did little to provoke the subsequent physically violent confrontation.

The state also advances an argument based on the principle of "proportionality." The state claims that, even if provoked by the conduct of Dakutak and Snow, LaPierre's response was, as

sal of LaPierre's murder convictions will therefore be required, LaPierre is not necessarily entitled to a new trial. Had the jury been instructed on the defense of heat of passion, there is a reasonable possibility that it might have convicted LaPierre of manslaughter instead of murder. There is no reason, however, to believe that a heat of passion instruction might have led the jury to acquit altogether. Under these circumstances, unless other error is found warranting reversal, the state should be given the opportunity, in lieu of a retrial on the murder charges, to elect the entry of judgment against LaPierre for manslaughter as to both Dakutak and Snow. *See Nix v. State,* 624 P.2d 823, 824–25 (Alaska App. 1981). This conclusion requires us to examine LaPierre's remaining claims of error.

LaPierre's next contention is that the trial court erred in allowing impeachment by evidence of LaPierre's prior conviction for a crime involving dishonesty or false statement. Under Alaska Rule of Evidence 609(b), such evidence is inadmissible to impeach the testimony of the accused "if a period of more than five years has elapsed since the date of the conviction."

LaPierre was convicted of burglary and larceny in 1978 and began serving his sentence at that time, more than five years prior to his trial in the present case. His sentence was reversed on appeal, however, and he was resentenced in 1981, within the five-year period preceding this trial. Over LaPierre's objection, the trial court initially allowed proof of the prior conviction, reasoning that the most recent sentencing date controlled for purposes of applying A.R.E. 609(b). On cross-examination, the state asked LaPierre if he had been convicted in 1981 of a crime involving dishonesty or false statement; LaPierre responded that he had. On redirect, LaPierre's

counsel asked when the conduct that resulted in the conviction had actually occurred, and LaPierre answered that it occurred in 1978. No further evidence concerning the offense was elicited.

Prior to final arguments, the trial court apparently reconsidered its original ruling. The court admonished both counsel to refrain from any mention of the prior conviction. LaPierre declined an instruction directing the jury to disregard the prior conviction, concluding that such advice would only serve to call the conviction once again to the jury's attention. Instead, LaPierre moved for mistrial. The motion was denied.

██ On appeal, the state concedes error, acknowledging that LaPierre's original sentencing date controlled for purposes of applying the five-year time limit of A.R.E. 609(b). *See Kelly v. State,* 663 P.2d 967, 971–72 & n. 3 (Alaska App.1983). The state nonetheless maintains that this error was harmless. We agree.

The testimony concerning LaPierre's conviction was minimal in this case, consisting of one brief reference by the prosecution and one by the defense. The jury was not told the specific nature of or circumstances surrounding the prior offense; even the fact that the prior conviction was for a felony was not disclosed. LaPierre's own counsel was able to establish that the conviction was based on conduct occurring a substantial period of time before the present case. Moreover, because the prior offense was described as a crime involving dishonesty or false statement, the jury was aware that it did not involve a crime of violence similar to the offense for which LaPierre was being tried. No mention of the prior conviction was made during the final argument.

a matter of law, disproportionate. Again, however, the evidence, when viewed in the light most favorable to LaPierre, does not support the state's argument. If LaPierre's version were fully credited, a reasonable juror might find that LaPierre had been subjected to a prolonged and persistent assault in which he was surrounded by three people, two of whom physically attacked him; the apparent purpose of the attack-

ers was to force LaPierre to an isolated area; LaPierre had suffered physical injury as a result of the attack and feared serious physical injury or death if his attackers succeeded in their endeavor; the three attackers had encircled LaPierre, cutting off any possible escape. Given this view of the evidence, the question of proportionality was one for the jury.

The likely extent of prejudice stemming from the erroneous admission of this minimal information concerning LaPierre's criminal background must be evaluated against the backdrop of the totality of the evidence at trial. The state's evidence against LaPierre, though perhaps not overwhelming, was nonetheless quite strong; LaPierre's claim of self-defense was impeached by the testimony of various eyewitnesses, by evidence of prior inconsistent statements that LaPierre made to the police, and by LaPierre's own conduct following the shooting, which strongly suggested a consciousness of guilt.

Even though considerable attention was devoted at trial to the issue of LaPierre's credibility, there was actually little dispute concerning most of the circumstances surrounding the offense. The principal focus of both parties during the final argument was on the reasonableness of LaPierre's conduct.

The primary prejudice against which the time limitations in A.R.E. 609(b) seek to protect is not that the jury, in assessing the accused's credibility as a witness, might give a stale conviction more weight than it deserves; for there is little reason to suspect that a jury would be incapable of understanding the fact that a stale conviction is only marginally relevant to the issue of credibility. Rather, the real prejudice targeted by the rule is the far more dangerous possibility that evidence of a prior conviction might be wholly ignored on the issue of credibility, while instead being improperly considered as character evidence—evidence tending to establish that the accused has a propensity to commit crimes like the crime charged or that the accused is a generally bad person, unworthy of the full protection of the law.

In this regard, the sketchy nature of the testimony in this case concerning LaPierre's prior conviction, the fact that his prior conviction was remote in time, and the fact that it was not for a crime similar to the crime charged are all circumstances that significantly diminish the possibility that it might have been relied on to any significant degree as evidence of bad character. It is particularly notable that LaPierre's character was not otherwise placed in issue or argued to the jury. The record leaves little indication that the jury's attention was ever actually directed to the issue of LaPierre's character.

In light of these considerations, and upon a thorough review of the record of the proceedings below, we conclude that there is little possibility—and certainly not a probability—that the erroneous reference to LaPierre's prior conviction had any appreciable effect on the jury's verdict. *See Love v. State*, 457 P.2d 622, 631–32 (Alaska 1969). Accordingly, we find the error to be harmless.

■ LaPierre's final claim is that he was deprived of effective assistance of counsel because his trial attorney had a conflict of interest. LaPierre similarly alleges a number of particulars in which he contends that his trial attorney failed to provide competent representation.[4] We find no merit to these claims.

Prior to trial, LaPierre's counsel, an assistant public defender in Bethel, moved to withdraw from the case, alleging a conflict of interest because the Public Defender Agency represented another defendant, David Simmons, in an unrelated case in Bethel. Simmons purportedly wanted to call LaPierre as a witness at his trial. The precise nature of the conflict was not disclosed below. The trial court denied the withdrawal motion filed by LaPierre's trial counsel.

On appeal, LaPierre argues that the trial court was required to accept his counsel's assertion of a conflict at face value, without any further showing in support thereof. LaPierre further maintains that a *per se* rule of reversal applies to his case, obviating the need to establish any prejudice resulting from the denial of his counsel's motion to withdraw.

Even assuming LaPierre to be correct in his assertion that an actual conflict of interest was established below, he is incorrect in maintaining that a *per se* rule of

---

**4.** LaPierre is represented by new counsel on appeal.

reversal applies. We decline to find that reversal automatically follows upon a bare showing of conflict of interest. Our view reflects the position adopted recently by the United States Supreme Court in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), and *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland,* the court, after initially discussing the *per se* rule of reversal that applies when the accused is deprived of counsel altogether, formulated a slightly narrower rule for cases where ineffective assistance of counsel results from a conflict of interest:

> One type of actual ineffectiveness claim warrants a similar, though more limited presumption of prejudice. In *Cuyler v. Sullivan,* the court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the *per se* rule of prejudice that exists for the Sixth Amendment claims mentioned above. Prejudice is presumed only if the defendant demonstrates that counsel "ac-

tively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance."

*Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067 (citations omitted).

In this case, LaPierre has, at most, demonstrated the existence of a conflict in the abstract. He has neither alleged nor demonstrated that his counsel "actively represented conflicting interests" or that the purported conflict "adversely affected his lawyer's performance." No adverse effect is apparent from the record. To the contrary, it appears that LaPierre was never actually called as a witness or required to testify at Simmons' trial. LaPierre has failed to make an adequate showing to justify a presumption of prejudice under the *Cuyler* and *Strickland* standard.

Apart from his conflict of interest claim, LaPierre argues that his trial counsel's performance at trial was substandard because his counsel failed to investigate the case adequately, failed to move for a change of venue, failed to conduct adequately rigorous questioning of prospective jurors on *voir dire,* and failed to develop defense theories sufficiently at trial. After considering LaPierre's arguments on these points, the superior court rejected them, finding, *inter alia,* that LaPierre had failed to establish a reasonable possibility of prejudice. *See Risher v. State,* 523 P.2d 421, 424–25 (Alaska 1974). Having reviewed the record, we conclude that the trial court's finding is not clearly erroneous.[5]

5. LaPierre additionally argues that he was deprived of a fair jury because the prosecution exercised its peremptory challenges to eliminate all caucasian members from the jury panel. LaPierre asserts that he is caucasian and that his jury was composed entirely of Alaska Natives. He relies on *Batson v. Kentucky,* —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), asserting that that case should apply retrospectively to his situation. Because LaPierre's claim is raised for the first time on appeal, however, the record is inadequate to allow consideration of its merits. The racial composition of the jury panel is not reflected in the record, and no opportunity has been afforded to the state to justify its peremptory challenges, assuming *arguendo* that such an explanation was called for. Under the circumstances, we do not reach the

merits of LaPierre's claim, finding that it has not adequately been preserved for decision on direct appeal. We believe it preferable, at this point, for LaPierre to pursue the issue by the filing of an application for post-conviction relief pursuant to Alaska R.Crim.P. 35(c). In so concluding, we express no view as to whether *Batson v. Kentucky* should be construed to apply to a case such as LaPierre's, which, although pending on direct appeal when *Batson* was decided, did not raise the jury selection issue until after that decision was announced. *Compare Allen v. Hardy,* —— U.S. ——, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), with *Griffith v. Kentucky,* —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). *See State v. Ridgely,* 732 P.2d 550 (Alaska 1987) (denying retroactive application of *Stephan v.*

LaPierre's convictions of first-degree murder and second-degree murder are REVERSED, and this case is REMANDED to the superior court. Upon remand, the state should be permitted the option of proceeding to retry the reversed convictions or of requesting entry of judgments for manslaughter as to each count.[6]

*State,* 711 P.2d 1156 (Alaska 1985), to a claim raised for the first time on appeal).

6. Our disposition on the merits makes it unnecessary for us to consider LaPierre's sentencing arguments.