COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Haley and Senior Judge Bumgardner
Argued at Richmond, Virginia


DOMINICK A. PARISI

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0158-08-4                      JUDGE JAMES W. HALEY, JR.
                                                          MARCH 24, 2009
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
                          Jeffrey W. Parker, Judge

        S. Jane Chittom, Appellate Defender (Office of the Appellate
        Defender, on brief), for appellant.

        Karen Misbach, Assistant Attorney General II (Robert F.
        McDonnell, Attorney General, on brief), for appellee.


                             I.  INTRODUCTION

        Appealing his conviction for malicious wounding, Dominick A. Parisi argues the circuit

court erred in refusing to grant his proposed jury instruction on the heat of passion.  We agree

and remand the case for a new trial.

                              II.  BACKGROUND

        In the evening of September 15, 2006, M.M., who was then a senior in high school,

hosted a party at his house.  His family had left for a trip out of the area.  Although M.M. knew

all the invited guests, late in the evening uninvited strangers arrived.  Parisi was among them.

        It is undisputed that during the course of the party, an altercation between Parisi, M.M.,

and B.T. occurred.  Because of that incident, a grand jury indicted Parisi for maliciously

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

wounding M.M.  A jury trial was held on October 19, 2007, during which the following relevant testimony was taken.

M.M. testified that a while after the strangers arrived, he decided to end the party.  He asked friend B.T. to help him tell the guests to depart.  M.M. stated that as people exited the back door, he noticed Parisi wearing a hat belonging to M.M.'s mother.  M.M. approached Parisi and removed the hat from his head.  M.M. then noticed Parisi appeared to have something "stuffed into his pants, and his shirt was kind of puffed out."  Deciding to confront Parisi, M.M. questioned him about the items under his clothing.  Parisi denied he had anything belonging to another person.  Yet when M.M. lifted up Parisi's shirt he discovered another hat.  At one point, B.T. approached and stood on the other side of Parisi.  M.M. and B.T. questioned Parisi about what he had, and Parisi became agitated.  Parisi then began to move towards the outside with the crowd and made his way onto the back patio, with M.M. and B.T. still near him.  Parisi eventually pushed B.T.  M.M. put his hand on Parisi's shoulder with the intent of stopping him to investigate the circumstances.  Parisi then swung his fist at B.T.  Parisi turned and swung at M.M., hitting him on the left side of his face.  M.M. suffered a cut through his mouth and into his gum, necessitating six stitches.

B.T. testified substantially the same as M.M.  He stated that after M.M. told him to help clear people from the house, M.M. and Parisi began to argue near the door of the back porch. B.T. got between Parisi and the door to prevent him from leaving.  Parisi eventually pushed B.T. out the door.  He soon thereafter attacked B.T.  B.T. asserted he never made offensive contact with Parisi's body.

The defense presented three witnesses who testified to a much different account of what occurred.

The first defense witness was Parisi's girlfriend, Carlye Lumsden. She testified she went to M.M.'s house with Parisi on the night in question. As they entered the house, M.M. placed a hat on Parisi's head. Parisi continued to wear the hat during his time at the party. As the couple prepared to leave the party with Parisi still wearing the hat, M.M. accused Parisi of trying to steal it. Parisi denied the allegation, took off the hat, and threw it to M.M. Yet M.M. again accused Parisi of attempting to steal the hat. As Parisi walked out the door, M.M. grabbed his neck from behind. At this point B.T. approached from the front. Lumsden "felt like we were going to get jumped." To avoid this scenario, Parisi struck B.T. and M.M. and hurriedly left with Lumsden.

Clayton McGlothlin, a friend of Parisi who also attended the party, testified similarly to Lumsden. He stated that upon entering the house, M.M. placed a large "cowboy-looking hat" on Parisi, who continued to wear it throughout his time there. Parisi still had the hat on when he was about to leave. M.M. asked Parisi to return the hat, which he did, but M.M. accused Parisi of attempting to steal it. M.M. then "grabbed [Parisi] around the neck from behind," appearing to choke him. B.T. approached from the front, grabbing Parisi's pockets. After successfully breaking free from this encounter for a moment, Parisi struck B.T. and M.M. Parisi then ran from the house.

Parisi testified on his own behalf. Like his other witnesses, he stated that as he entered M.M.'s house, M.M. placed a hat on his head. Parisi wore the hat for the duration of the time he stayed at the party. As he prepared to walk out the door, M.M. asked Parisi to return the hat. Parisi tossed him the hat. However, M.M. believed Parisi had intended to steal it. He approached Parisi and interrogated him regarding his intent concerning the hat. Parisi denied attempting to steal it. He tried to leave, but M.M. grabbed his neck to stop him. B.T. came from the other side and tried to get inside Parisi's pockets. Parisi testified he believed B.T. "was trying to take my money or my phone or something." To get away from this situation, he

punched B.T. and M.M. and left the party. Parisi testified that as he left, "I took off. I just ran. I just feared for Carlye's safety, really." He "grabbed [Lumsden] by the arm and took off running."

After the conclusion of the evidence, Parisi asked the court to instruct the jury concerning heat of passion and proffered an instruction to that end.[1] The court refused to issue it, holding no evidence existed to support it. However, the court did issue instructions concerning unlawful wounding and assault and battery, which are lesser-included offenses of malicious wounding. The jury convicted Parisi of malicious wounding. He now appeals, arguing the court erred in denying his jury instruction on heat of passion.

### III. ANALYSIS

On appeal from a circuit court's denial of a defendant's jury instruction, we view the evidence in the light most favorable to the defendant. Commonwealth v. Cary, 271 Va. 87, 90-91, 623 S.E.2d 906, 907 (2006). While an instruction must have "more than a scintilla of evidence" in the record to support it, Commonwealth v. Donkor, 256 Va. 443, 445, 507 S.E.2d 75, 76 (1998), where a defendant's "proffered instruction finds any support in credible evidence, its refusal is reversible error," McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975). This includes jury instructions concerning the heat of passion. Belton v. Commonwealth, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958).

A heat of passion defense, if proven, negates the presence of malice. Hodge v. Commonwealth, 217 Va. 338, 345, 228 S.E.2d 692, 697 (1976). Heat of passion arises where a "reasonable provocation," Stewart v. Commonwealth, 245 Va. 222, 240, 427 S.E.2d 394, 406 (1993), causes a person to become "deaf to the voice of reason; so that, although the act was

---

[1] Parisi's proposed instruction came from the Virginia Model Jury Instructions. No argument has been made here or before the circuit court that it incorrectly states the law.

- 4 -

intentional . . . it was not the result of malignity of heart, but imputable to human infirmity," Hannah v. Commonwealth, 153 Va. 863, 870, 149 S.E. 419, 421 (1929). The validity of a heat of passion defense "is determined by the nature and degree of the provocation, and may be founded upon rage, fear, or a combination of both." Barrett v. Commonwealth, 231 Va. 102, 106, 341 S.E.2d 190, 192 (1986) (citations omitted). "Passion . . . is not limited to rage." McClung, 215 Va. at 657, 212 S.E.2d at 292.[2]

Our Supreme Court applied these principles in a manner applicable here in Barrett. There the victim had threatened the defendant and the defendant feared the victim because the victim was known to carry a firearm. 231 Va. at 105, 341 S.E.2d at 192. Late one night, the defendant and the victim encountered each other. Id. at 104, 341 S.E.2d at 191. According to the defendant's evidence, the victim approached him and used foul language. Id. Soon afterwards, the defendant then heard someone shout: "'Watch out . . . he's got a gun.'" Id. at 105, 341 S.E.2d at 192. Believing the referenced person was the victim, the defendant turned, pulled out a gun, and shot the victim. Id. The Court held "that a jury could reasonably find from the evidence that [the defendant] did not act maliciously, but acted upon a reasonable provocation, in the heat of passion induced by fear." Id. at 107, 341 S.E.2d at 193.

The Virginia Supreme Court considered another relevant heat of passion case in Crockett v. Commonwealth, 187 Va. 687, 47 S.E.2d 377 (1948). In that case, the victim hit the defendant several times after a dispute concerning a card game. Id. at 691, 47 S.E.2d at 379. The

---

[2] Other courts have also noted fear may suffice for a heat of passion instruction. See, e.g., State v. Abeyta, 901 P.2d 164, 171 (N.M. 1995) (noting that a heat of passion defense includes "fear for one's own safety that may result in an unreasonable belief in the need to defend oneself"); State v. Fetzik, 577 A.2d 990, 995 (R.I. 1990) (quoting State v. Williams, 432 A.2d 667, 669 (R.I. 1981), for the notion that "[h]eat of passion may be aroused by 'fear and terror as well as anger'"); LaPierre v. State, 734 P.2d 997, 1001 (Alaska Ct. App. 1987) ("As commonly defined, 'passion' is sufficiently broad to encompass a range of emotions including fear.").

defendant was rendered unconscious and suffered a broken nose, a laceration on his face, and bruises on his eye and cheek. Id. Later that evening, the defendant and the victim encountered each other again. Id. at 693, 47 S.E.2d at 380. According to the defendant, the victim threatened to "finish" him. Id. The defendant warned the victim not to approach him, but to no avail. Id. The defendant then shot the victim. Id. The defendant argued "he was afraid of [the victim]." Id. at 692, 47 S.E.2d at 379. The Court held that if the jury believed the defendant's testimony, it could find the defendant acted in the heat of passion and, therefore, the trial court should have issued a jury instruction on this. Id. at 695-96, 47 S.E.2d at 381.

This Court considered another factual situation relevant here in Miller v. Commonwealth, 5 Va. App. 22, 359 S.E.2d 841 (1987). The victim started a fight with the defendant in a store parking lot, but a security guard broke it up. Id. at 23, 359 S.E.2d at 841. The defendant then walked to a nearby crowd and obtained a handgun. Id. at 23-24, 359 S.E.2d at 842. He appeared upset, shouting for the gun, and having several persons unsuccessfully attempt to hold him back. Id. at 26, 359 S.E.2d at 843. He fired two shots, hitting the victim once and severely wounding him. Id. at 24, 359 S.E.2d at 842. On these facts, we held the evidence supported a heat of passion instruction. Id. at 26, 359 S.E.2d at 843.

Applying these principles to this case and viewing the evidence in the light most favorable to Parisi, we conclude the circuit court erred in denying Parisi's requested jury instruction concerning heat of passion. A rational jury could have concluded that the attack on Parisi from the front and back in the form of a choke hold and the attempted theft together constituted a reasonable provocation. Testimony concerning Parisi's emotional state provided more than a scintilla of evidence that provocation caused fear for his own safety and the safety of his girlfriend, Lumsden. Parisi testified that after the confrontation with M.M. and B.T. ended, he "took off. I just ran. I just feared for Carlye's safety, really." Parisi stated he "grabbed

[Lumsden] by the arm and took off running." Lumsden testified that when the confrontation occurred, she "felt like we were going to get jumped" and that when it ended Parisi "grabbed me, and we left." McGlothlin testified that after Parisi struck M.M., Parisi "ran" from the scene.

Furthermore, the facts here support the need for a heat of passion instruction similarly to Barrett, Crockett, and Miller. Whereas in Barrett and Crockett, the defendant only faced the prospect of violence, Barrett, 231 Va. at 105, 341 S.E.2d at 192; Crockett, 187 Va. at 691-93, 47 S.E.2d at 379-80, here Parisi, according to his evidence that the jury could have accepted, was undergoing simultaneous physical assaults by M.M. and B.T. when he responded with force. Whereas in Miller, the victim initiated a fight with the defendant, 5 Va. App. at 23, 359 S.E.2d at 841, here also M.M. and B.T. began the physical confrontation with Parisi. Moreover, while in Miller, the defendant walked across the street and procured a handgun after the fight the victim started had ended, id. at 23-24, 359 S.E.2d at 842, here Parisi's violence occurred during an assault upon him.

The Commonwealth, citing Turner v. Commonwealth, 23 Va. App. 270, 476 S.E.2d 504 (1996), aff'd, 255 Va. 1, 492 S.E.2d 447 (1997), maintains that even if the circuit court erred, any error was harmless. We disagree.

In Turner, we held a circuit court's failure to properly instruct a jury could, under some circumstances, be harmless. We held:

> Thus, where the reviewing court is able to determine that the trial court's error in failing to instruct the jury could not have affected the verdict, that error is harmless. Such a determination can be made where it is evident from the verdict that the jury would have necessarily rejected the lesser-included offense on which it was not instructed.
>
> By contrast, where it is impossible to determine from the verdict whether the jury would have necessarily rejected a

> lesser-included offense on which it was not instructed, error in refusing to instruct on that offense is not harmless.

Id. at 276-77, 476 S.E.2d at 507 (citations omitted).

The Turner Court found that although the circuit court there erred in failing to instruct the jury on voluntary manslaughter, the error was harmless since the jury convicted the defendant of first-degree murder, bypassing the lesser-included offense of second-degree murder. Id. at 275, 277-78, 476 S.E.2d at 507-08. This meant the jury found the defendant acted in a premeditated manner, which is inconsistent with voluntary manslaughter. Id. at 277, 476 S.E.2d at 508. The Court held that "the jury in this case, by rejecting the lesser-included offense of second degree murder, necessarily rejected the factual basis upon which it might have rendered a verdict on the lesser-included offense of voluntary manslaughter." Id. at 278, 476 S.E.2d at 508.

The error here was not harmless. The jury convicted Parisi of malicious wounding, rejecting the lesser-included offenses of unlawful wounding and assault and battery. Although the court defined malice for the jury and instructed the jury that if it found malice lacking it could convict Parisi of unlawful wounding, the court did not instruct the jury that heat of passion negates malice. If the court had instructed the jury on heat of passion, the jury may have concluded Parisi lacked malice and convicted him of a lesser offense. Thus, the trial court erred.

For the foregoing reasons, the judgment of the circuit court is reversed and the case remanded for a new trial if the Commonwealth be so advised.

<u>Reversed and remanded.</u>