**Gene F. MOORE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1343.**

Court of Appeals of Alaska.

July 17, 1987.

Teresa A. Hogan, Anchorage, for appellant.

James V. Gould, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Ronald W. Lorensen, Acting Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Gene F. Moore was tried by jury on charges of receiving a bribe (AS 11.56.-110(a)(2), first-degree theft (AS 11.46.-120(a), perjury (AS 11.56.200), and scheme to defraud (AS 11.46.600(a)(2). Superior Court Judge Charles R. Tunley instructed the jury, over Moore's objection, that it could consider the crime of misapplication of property (AS 11.46.620) as a lesser-included offense of scheme to defraud. The jury acquitted Moore of all charges contained in the indictment, but convicted him of misapplication of property. Judge Tunley sentenced Moore to a term of two years' imprisonment with one year suspended, and ordered restitution in the amount of $205,000. Moore appeals, contending that misapplication of property is not a lesser-included offense of scheme to defraud, that the jury instructions were inadequate, and that the sentence imposed is excessive.

The charges filed against Moore stemmed from events that occurred while he was employed as city manager for the city of Kotzebue. In 1981, the city began planning extensions of water and sewer lines. In April of 1982, the city council

authorized the purchase of materials necessary to complete the project. The city put the project out to bid, but after receiving insufficient funding from the state, the city rejected all bids. The city council subsequently authorized a "forced contract," which enabled the city to avoid the bidding process and undertake the project with available funds. As city manager, Moore contracted with Larry Thomas to have the extensions installed. Thomas had completed similar projects to the satisfaction of the city in the past.

Neither Thomas nor the city had the heavy equipment necessary to complete the project. Thomas proposed that the city purchase equipment for him and that he reimburse the city as work on the project was performed. Moore authorized the purchase, with city funds, of two pieces of heavy equipment at a total cost of $207,-000. The equipment was delivered to Thomas.

Thomas made only one payment to the city, in the amount of $50,000. After that payment was made, Thomas was given a bill of sale for the equipment from the city; the bill of sale was signed by Moore, as city manager, and by the city clerk. Conflicting testimony was presented at trial concerning Thomas' failure to make any further payments. Thomas testified that he had intended to finish repaying by offsetting his cost overruns on the project against the balance of the purchase price for the equipment. However, no offsets were made, and Thomas made no additional payments after receiving the bill of sale.

At the same time that Thomas made the $50,000 payment to the city, he also gave Moore a $50,000 check made out to an account at the United Bank of Alaska that was held in Moore's name. According to Thomas, the entire $100,000 amount had been intended as payment to the city for the equipment used on the project. Thomas testified that Moore had requested him to make his payment in the form of two separate checks, one to the city of Kotzebue and one to the United Bank of Alaska account number. In contrast, Moore maintained that the second $50,000 payment related to a land transaction between Moore and Thomas that was never consummated.

In charging Moore with engaging in a scheme to defraud, the state's general theory was that Moore had used city funds without authorization to obtain heavy equipment for Thomas, and that he had planned to divert to his own use Thomas' partial payment for the equipment. In keeping with this general theory, Judge Tunley found that the crime of misapplication of funds was a lesser-included offense of scheme to defraud, because, the jury could not find that Moore had acquired the equipment for Thomas with the intent to defraud the city, without also finding that he was guilty of misapplying the city's money by violating his fiduciary duties as city manager.

In arguing that Judge Tunley erred in allowing the jury to consider misapplication of property as a lesser-included offense of scheme to defraud, Moore advances several distinct theories. He claims that there is no inherent relationship between the two offenses, that conviction of the greater offense would not have been inconsistent with acquittal on the lesser, and that there was insufficient evidence to support a conviction for misapplication of property. We need only address Moore's claim that the offenses are not inherently related.

■ It is undisputed that the offense of misapplication of property requires proof of elements different from the elements involved in the proof of a scheme to defraud. Accordingly, misapplication of property is not a lesser-included offense of scheme to defraud under the traditional statutory elements theory of lesser-included offenses. Alaska, however, has adopted the cognate approach, which focuses closely on the facts charged in the indictment and the evidence presented at trial to determine whether the defendant had actual notice of possible lesser-included offenses. *State v. Minano*, 710 P.2d 1013 (Alaska 1985); *Elisovsky v. State*, 592 P.2d 1221 (Alaska 1979). When, under the evidence at trial, a conviction of the offense charged would be inconsistent with acquittal of a

lesser offense, and when there is a disputed fact that distinguishes the lesser offense from the offense charged, then a lesser-included offense instruction is appropriate under the cognate approach, even if the lesser offense requires proof of statutory elements different from those included in the charged offense. *Id. See also Marker v. State,* 692 P.2d 977, 982–83 (Alaska App.1984).

The cognate approach to lesser-included offenses is nevertheless subject to an important qualification: where the statutory elements approach does not apply and reliance on the cognate approach is necessary, it has ordinarily been held that there must be an inherent relationship between two offenses before one may be deemed a lesser-included offense of the other. *See, e.g., Marker v. State,* 692 P.2d 977 (Alaska App.1984). In *Reynolds v. State,* 706 P.2d 708 (Alaska App.1985), we clarified the "inherent relationship" requirement of the cognate approach:

> [W]e think it self-evident that the boundaries of the requirement must be circumscribed by the constitutional rule of merger and can extend no farther. For if two offenses are so fundamentally disparate—so different in their basic social purposes—that merger between them is not compelled and separate sentences would be permissible upon conviction of both, then no greater/lesser-included offense relationship can arise, no matter how clearly intertwined these offenses may be in the factual and evidentiary setting of a given case. Without merger, the prosecution is free to charge, convict on and punish two offenses separately; the accused is in no position to insist that one offense be treated as a lesser-included offense and considered only as an alternative to the other.

*Id.* at 711 (footnote omitted). The initial question to be addressed here is whether the two statutory provisions at issue are inherently related under *Reynolds.*

As defined in AS 11.46.600, the crime of scheme to defraud is aimed at those who engage in plans to obtain money or property from others by false pretenses or representations. The prohibited conduct includes any act of "engaging" in a fraudulent scheme when that act is coupled with the obtaining of at least some property in furtherance of the scheme. Thus, AS 11.-46.600 provides, in relevant part:

> *Scheme to defraud.* (a) A person commits the crime of scheme to defraud if the person engages in conduct constituting a scheme
>
> . . . .
>
> (2) to defraud one or more persons of $10,000 or to obtain $10,000 or more from one or more persons by false or fraudulent pretense, representation, or promise and obtains property or services in accordance with the scheme.

The statute derives from the federal mail fraud statute, 18 U.S.C. § 1341 (1970), and the New York scheme to defraud statutes, N.Y. Penal Law §§ 190.60(1) and 190.65(1). The commentary to the New York statutes indicates that they, too, were drawn from the federal mail fraud statute and that both the New York and federal statutes were designed to overcome various obstacles posed by conventional larceny statutes in the prosecution of hard core consumer fraud. *See* Additional Commentary to N.Y. Penal Law §§ 190.60 and 190.65.

In contrast, Alaska's misapplication of property statute derives from Hawaii Revised Statute § 708–874, Model Penal Code § 224.13, and Oregon Revised Statutes § 165.095. The gravamen of this offense is the breach of a fiduciary or quasi-fiduciary duty. The prohibited conduct includes any act of dealing with or disposing of property in violation of the obligations of a fiduciary relationship. Thus, AS 11.46.620 provides, in relevant part:

> *Misapplication of property.* (a) A person commits the crime of misapplication of property if the person knowingly misapplies property that has been entrusted to that person as a fiduciary or that is property of the government or a financial institution.
>
> . . . .
>
> (c) For purposes of this section, "misapply" means to deal with or dispose of property contrary to

(1) law;

(2) a judicial rule or order; or

(3) the obligations of a fiduciary relationship.[1]

Commentary to the Hawaii statute states the intent of the law as discouraging both "the knowing violation of fiduciary obligations and the knowing misapplication of property belonging either to the government or to a financial institution." Commentary on Haw.Rev.Stat. § 708–874. The commentary states further that:

Misapplication in this context is not theft; there is no intent permanently to deprive the owner of his property.... The danger envisioned is the risk "that one who administers or controls the property may deliberately depart from the legal rules applicable to his control of the property in question and may gamble with the property at considerable known risk to the safety of the property in question."

*Id.* (footnote omitted).

Commentary to § 224.13 of the Model Penal Code (misapplication of entrusted property and property of a government or financial institution) similarly distinguishes acts of misapplication from acts of embezzlement and larceny:

This section covers the mishandling of property restricted by law to particular uses, such as property held in trust or public funds appropriated for designated purposes. The essence of the offense is a knowing violation of the restrictions or regulations governing the handling of property. No purpose to appropriate the property for the benefit of the actor or another nor any purpose to deprive the owners or lawful beneficiaries of their property need be proved.

Commentary to Model Penal Code § 224.13 (1980).

The commentary to the Hawaii statute and to the Model Penal Code finds further support in the commentary to Alaska's misapplication of property statute, which emphasizes that "[t]he statute does not require that the misapplication involve a risk of loss or detriment to the owner. Any knowing misapplication will result in the imposition of criminal penalties." Commentary on the Alaska Revised Criminal Code, Senate Journal Supplement No. 47 at 59 (June 12, 1978).

■ In our view, these commentaries establish that Alaska's scheme to defraud and misapplication of property statutes are not inherently related. The two statutes prohibit different acts and were designed to protect separate and distinct societal interests. Accordingly, even when a single course of conduct results in the violation of both provisions, there is nothing to preclude the defendant from being convicted of both offenses. *See Whitton v. State,* 479 P.2d 302 (Alaska 1970). Notably, in analogous situations involving comparable statutes, courts in other jurisdictions have held that the entry of separate convictions is not barred when a single act has resulted in two statutory violations. *See, e.g., United States v. Harenberg,* 732 F.2d 1507 (10th Cir.1984); *United States v. Barket,* 530 F.2d 181, 186 (8th Cir.1975), *cert. denied,* 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 282 (1976); *State v. Heinz,* 119 N.H. 717, 407 A.2d 814 (1979). *See also United States v. Scotto,* 641 F.2d 47 (2nd Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981); *United States v. Raborn,* 575 F.2d 688 (9th Cir.1978); *United States v. Brighton Building and Maintenance Company,* 435 F.Supp. 222 (N.D. Ill.1977), *aff'd,* 598 F.2d 1101 (7th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979).

It remains to be considered whether the inherent relationship requirement should be held to apply in the circumstances of this case. In *Reynolds,* citing the lack of an inherent relationship, we affirmed the trial court's denial of a request for a lesser-included offense instruction when that request had been made by the defendant.

---

1. The trial court's instructions permitted the jury to consider only that portion of the statute relating to "property that has been entrusted to [a] person as a fiduciary." The jury was not instructed on the portion of the statute relating to "property of the government or a financial institution."

*Reynolds v. State,* 706 P.2d 708, 711 (Alaska App.1985). In the present case, the situation is reversed: the lesser-included offense instruction was given at the request of the state, and over Moore's objection. We nevertheless conclude that the policies we considered in *Reynolds* equally preclude the giving of a lesser-included offense instruction in cases such as Moore's, where the tables are turned.

Indeed, additional considerations provide even stronger grounds for applying the inherent relationship requirement in cases such as Moore's. When a request for a lesser-included offense instruction comes from the state, over defense objection, that request should, if anything, be more closely scrutinized due to the potential for prejudice arising from lack of notice to the defense. *See United States v. Stolarz,* 550 F.2d 488, 492 (9th Cir.), *cert. denied,* 434 U.S. 851, 98 S.Ct. 162, 54 L.Ed.2d 119 (1977); *United States v. Whitaker,* 447 F.2d 314, 319–21 (D.C.Cir.1971).

Of additional significance is the constitutional right of a criminal defendant to be charged by indictment in any prosecution for a felony. Alaska Constitution, art. 1, § 8. This right is not infringed when an uncharged crime is clearly a lesser-included offense of a charged crime and when the two offenses are integrally related. Thus, we have found that a jury may be instructed on an uncharged lesser-included offense, even when the instruction is given over the defendant's objection. *See Blackhurst v. State,* 721 P.2d 645, 649–50 (Alaska App. 1986). Problems begin to arise, however, when offenses are so separate that they are not subject to merger; in such cases, it can persuasively be argued that, if a decision to prosecute on the lesser offense is to be made, it is the grand jury that must make it.

Moreover, *Reynolds* makes it clear that, by refraining from presenting an unrelated lesser offense to the grand jury, the state has the option of precluding the defendant from seeking to benefit from conviction on the lesser offense. *Reynolds v. State,* 706 P.2d 708, 711 (Alaska App.1985). Because the state has that option, its election not to

indict for a lesser offense that is not inherently related to the offense charged can reasonably be taken to indicate that the lesser offense will not be at issue. In reliance on the state's decision not to charge the lesser offense, the defendant may choose to adopt a strategy that emphasizes weaknesses in the state's proof on the charged offense, while conceding elements of the uncharged lesser offense that might otherwise have been more vigorously contested.

In the present case, for example, had misapplication of property been charged in the indictment, Moore may well have elected to place greater emphasis at trial on developing evidence concerning the nature and scope of his fiduciary duties as city manager, and the extent of his authority to purchase equipment for use by Thomas. Because of the lack of an inherent relationship between the greater and lesser offenses in this case, it would not have been unreasonable for Moore, in formulating his defense strategy, to rely on the state's decision not to charge the lesser offense.

We conclude that, under the circumstances, the superior court erred in instructing the jury on misapplication of property as a lesser-included offense of scheme to defraud. Misapplication of property is not a lesser-included offense of scheme to defraud under the statutory elements approach; application of the cognate approach is precluded by the lack of an inherent relationship between the two statutes.

The conviction is REVERSED.