NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

CODY DYLAN RIGGS,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-14069
Trial Court No. 3AN-20-08967 CR

O P I N I O N

No. 2816 — October 3, 2025

Appeal from the Superior Court, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Quinlan Steiner, Attorney at Law, under contract with the Public Defender Agency, and Terrence Haas, Public Defender, Anchorage, for the Appellant. RuthAnne Beach, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Wollenberg, Harbison, and Terrell, Judges.

Judge WOLLENBERG.

In August 2021, Cody Dylan Riggs was on pretrial release, subject to house arrest with GPS electronic monitoring by Alaska Defendant Monitoring (ADM), a private monitoring company. Riggs was authorized to leave his residence under

certain circumstances, including for work, if he received verified work passes from ADM.

Over the course of four days in August 2021, Riggs's GPS ankle monitor indicated that, on several occasions, he was in unauthorized locations. The State charged Riggs with one count of third-degree escape for leaving his residence without permission while on pretrial house arrest.[1] Riggs claimed at his trial that he had received prior authorization for his whereabouts on those days. A jury convicted him as charged.

Riggs appeals his conviction, raising two claims.

First, Riggs argues that there was insufficient evidence to support his conviction because, while the court ordered him to house arrest, the court delegated the approval of his specific address to ADM. Riggs notes that the third-degree escape statute prohibits a person from leaving the residence "designated by a judicial officer" as a condition of release, and he contends that he is not guilty of third-degree escape because his specific address was not "designated" by a judicial officer.[2]

But having reviewed the legislative history of the third-degree escape statute, we conclude that liability for third-degree escape under AS 11.56.320(a)(4)(B) for "leav[ing] one's residence" does not turn on whether the court personally approved the specific address at which the defendant would reside, but rather turns on whether the court ordered the defendant to remain at a residence on house arrest.[3] We therefore reject Riggs's claim.

---

[1] AS 11.56.320(a)(4)(B). A person commits third-degree escape under this provision if the person, "while on release under AS 12.30, [and] without prior authorization, leaves [their] residence or other place designated by a judicial officer as a condition of release."

[2] *Id.*

[3] Although Riggs's case was prosecuted under the portion of AS 11.56.320(a)(4)(B) precluding a person on release from "leav[ing] one's residence" without prior authorization, we note that this same statutory provision also applies to leaving another

Second, Riggs argues that the superior court erred in refusing to instruct the jury on his proposed lesser included offense, violating conditions of release.[4] The superior court denied this requested instruction, ruling that because there was no element distinguishing the charged offense (third-degree escape) from the proposed lesser included offense (violating conditions of release) under the facts of Riggs's case, there was no set of circumstances under which the jury could find Riggs guilty of violating conditions of release without also finding him guilty of escape. We conclude that the superior court did not err in so ruling.

Accordingly, we affirm Riggs's conviction.

*Underlying facts and procedural history*

In November 2020, Cody Dylan Riggs was arrested and charged with several criminal offenses. The court subsequently released Riggs on house arrest with electronic monitoring and supervision by Alaska Defendant Monitoring (ADM).

In May 2021, Riggs filed a request for a subsequent bail review hearing, requesting, *inter alia*, approval to leave his residence to go to work. The court approved the request and set a specific schedule for when Riggs could leave his residence to go to work. That month, Riggs began working at Eagle Automotive.

In June 2021, Riggs filed a request to modify his work schedule. Riggs asked the court to release him from the work schedule previously approved by the court and instead allow ADM to approve his requests to leave his residence "for verified work," as needed. The court approved Riggs's request in July 2021. The court order required that Riggs remain under house arrest "at a residence determined by ADM,"

---

"place designated by a judicial officer as a condition of release," without prior authorization.

[4] AS 11.56.757(a).

but granted him permission to leave the residence at the discretion of ADM for verified work.

Riggs signed a contract with ADM outlining the terms of his monitoring. Under this contract, Riggs was confined to his residence from 8:00 a.m. to 8:00 p.m. with some exceptions, including court appearances, meetings with counsel, and "[p]eriod[s] during which [he was] at a location ordered by the court for purposes of employment." Even if he left his residence for these permissible purposes, Riggs was required to give at least twenty-four hours' notice and obtain approval from ADM. After 8:00 p.m., Riggs was subject to a nighttime curfew, under which he was precluded from departing his approved residence for any reason other than to receive emergency medical care.

The contract provided that, if Riggs was employed, he would submit a weekly work schedule to ADM in advance of the week. If he needed to work outside of those pre-approved hours, Riggs would need to contact ADM for permission prior to any departure from his residence. Riggs could do this by calling or texting ADM, even after normal work hours. The contract stated that Riggs was required "to go directly to the place(s) authorized and return directly to [his] approved residence."

Riggs acknowledged, as part of the contract, that any unauthorized departure from his residence or failure to return to his residence after an authorized departure would be considered a violation and could result in termination of electronic monitoring. The contract also informed Riggs that he could be charged with felony escape if, while on house arrest, he was not in his residence or on an approved pass.

From February 2021 (when Riggs originally signed the ADM contract) through most of August of that year, Riggs's house arrest proceeded without incident. Pursuant to court order and his monitoring contract with ADM, Riggs submitted a weekly work schedule to ADM and received approval if he needed to work outside those hours.

The events at issue in this case took place over the course of several days, from August 22 to August 25, 2021.

Late in the evening on August 22, Riggs's GPS monitor indicated that he stayed late at Eagle Automotive after his approved work hours. He then drove to a different address, which was not an approved address or workplace.

The next day, August 23, Riggs returned to Eagle Automotive late in the evening, after his authorized work hours.

On August 24, Glenn Hamby, the ADM employee supervising Riggs, texted Riggs, asking him to come to the ADM office for an in-person meeting about his presence at unapproved locations. Riggs did not appear for that meeting.

That same day, Riggs went to his mother's house, where he was planning to move (but which was not an approved address). That night, he again stayed late at Eagle Automotive.

The next afternoon, August 25, Riggs drove from his residence to McDonald's and back home. He then drove to another address, which was not an approved work address, but which Riggs claimed Eagle Automotive was moving to. Later that night, after his approved work hours, Riggs went back to Eagle Automotive.

The next day, August 26, Hamby drove to Riggs's residence to remand him into custody because Riggs had not responded to his request to come into the office. Hamby knew that Riggs was at home because his GPS monitor showed that he was there. Riggs testified that, although he was home, he did not hear Hamby knocking. Hamby sent Riggs a text message telling him that ADM was at his residence to remand him into custody. About twenty or thirty minutes later, Riggs replied that he was reporting to the ADM office. Riggs went to the ADM office and was remanded into custody for violating his conditions of release.

Riggs was indicted on one count of third-degree escape,[5] which was added to the other charges in his underlying criminal case.

The escape charge was severed from the other charges. Riggs first proceeded to a jury trial on the earlier charges, and he was acquitted of those offenses. Riggs then proceeded to trial on the escape charge.

At trial, the primary issue was whether Riggs had (or reasonably believed that he had) permission for all of his deviations from his approved work schedule that took place from August 22-25 or whether these were without prior authorization. The State introduced the court's bail order, Riggs's electronic monitoring contact with ADM, and a log of Riggs's GPS locations over the relevant days. Hamby testified that Riggs had not asked for or received permission to be at Eagle Automotive outside of pre-approved work hours or to visit the other addresses outside home or work. He testified that he could have arrested Riggs for a violation after the first time Riggs went to an unapproved location, but he chose to summon Riggs for an in-person meeting to give him an opportunity to explain his visits to other addresses; Riggs failed to appear for that meeting.

Riggs, on the other hand, largely testified that he had received permission to go everywhere that he went over those four days.[6] Riggs acknowledged that Hamby had asked him to report to the ADM office on August 24, but he did not show up to the meeting.

---

[5]  AS 11.56.320(a)(4)(B).

[6]  With respect to his late-night visit to Eagle Automotive on August 23, 2021, Riggs testified that there had been a break-in at the shop and Anchorage Police Department officers called him to that location. Riggs testified that he thought the officers had the authority to summon him to Eagle Automotive outside of his regular work hours.

With respect to his visit to McDonald's on August 25, Riggs did not offer an explanation for this visit in his testimony.

After the close of the defense case, the parties discussed jury instructions. The superior court agreed to give a factual unanimity instruction to the jury. In the instruction, the court noted that the State had presented evidence of more than one event that could support the escape charge and directed the jurors that they had to be unanimous as to the specific act or acts that the State had proven beyond a reasonable doubt.

Riggs asked the court to instruct the jury on the lesser included offense of violating conditions of release.[7] The superior court ruled that this offense was not a lesser included offense of escape in Riggs's case, and therefore declined to provide the requested instruction.

In closing, the State argued that Riggs knew he was not at his residence at the required times and that he recklessly disregarded the fact that he did not have prior authorization to leave his residence. Defense counsel argued that Riggs believed he had permission or authorization and, although he "made a detour on the way home" at one point, he did not act recklessly with respect to the lack of prior authorization.

The jury convicted Riggs of one count of third-degree escape.

*Why we reject Riggs's sufficiency-of-the-evidence claim*

Riggs was convicted under the subsection of the third-degree escape statute that reads: "One commits the crime of escape in the third degree if one . . . while on release under AS 12.30, [and] without prior authorization, leaves one's residence or other place designated by a judicial officer as a condition of release."[8] At issue on appeal is the meaning of the phrase "residence . . . designated by a judicial officer," as used in the third-degree escape statute. Riggs contends that the statute requires a judicial officer

---

[7]   AS 11.56.757(a).

[8]   AS 11.56.320(a)(4)(B).

to designate the specific address at which the defendant will reside, and he notes that in his case, the court delegated the approval of his specific residence to ADM. Riggs argues that, because there was no evidence that his specific residence was designated by a judicial officer, there was insufficient evidence to support his conviction for third-degree escape.[9]

Whether the State was required to prove that Riggs's specific address was designated by a judicial officer, or whether this language required only that the judicial officer order Riggs to house arrest (with approval of the specific residence being delegated to the monitoring agency), is a question of statutory interpretation.

When we engage in statutory interpretation, we examine the plain language of the statute, the legislative history, and the legislative purpose of the

---

[9] The State contends that Riggs invited any error because he asked the court to release him to ADM supervision. But the State mischaracterizes Riggs's argument. As Riggs notes in his reply brief, he is not arguing that the court lacked the *authority* to delegate the designation of his residence to ADM. Rather, his argument is that, *because* of this delegation, his violations do not constitute felony escape but instead constitute only the misdemeanor offense of violating conditions of release. The invited error doctrine therefore does not apply to Riggs's claim. *See Frankson v. State*, 282 P.3d 1271, 1273 (Alaska App. 2012) (explaining that an error of the trial court is invited if the error was made "at the request of the party claiming error on appeal").

We note, however, that although Riggs frames his claim as a challenge to the sufficiency of the evidence based on the statutory phrase "designated by a judicial officer," this language was not included in such terms in the jury instruction defining the elements of the escape offense. Consistent with the statutory language, Riggs originally proposed a jury instruction requiring the jury to find, *inter alia*, that Riggs "knowingly left his residence or other place designated by a judicial officer." In contrast, the State proposed an instruction that, as to this element, required the jury to find only that Riggs "knowingly left his designated residence" — without any reference to the fact that this designation needed to be "by a judicial officer." The superior court ultimately accepted the State's version of this element, without objection. And Riggs never argued that the court's order to remain on house arrest at an address approved by ADM did not constitute a sufficient "designation" for purposes of the statute. It is therefore not clear that, even if Riggs prevailed on this claim, he would be entitled to a judgment of acquittal. See our discussion of an analogous issue in *Burton-Hill v. State*, 569 P.3d 1, 12 (Alaska App. 2025).

statute.[10] Alaska has "rejected a mechanical application of the plain meaning rule in favor of a sliding scale approach" to statutory interpretation.[11] Under this approach, "[T]he plainer the language of the statute, the more convincing any contrary legislative history must be."[12] Ultimately, however, our role is to "ascertain the legislature's intent and then to construe the statute so as to implement that intent."[13] We avoid construing statutes in a manner that would lead to patently absurd results or undermine the legislative purpose of the statute.[14]

Riggs relies on the plain language of the statute, which precludes a person from leaving their residence or other place "designated by a judicial officer." But this language is ambiguous: must the court designate the *specific* address at which the defendant will reside, or is it sufficient for the court to order the defendant to remain at *any* residence (if approved by the monitoring agency)?

The statute's legislative history does not directly address this question. But the overall purpose of the statute and the practicalities of administering pretrial release undermine Riggs's claim.

The relevant provision of the third-degree escape statute — *i.e.*, the provision related to pretrial release — was enacted in 2019 as part of House Bill 49, an omnibus crime bill.[15] The full provision provides that a person commits third-degree

---

[10]  *Green v. State*, 541 P.3d 1137, 1143 (Alaska App. 2023) (citing *Alaska Trustee, LLC v. Bachmeier*, 332 P.3d 1, 7 (Alaska 2014)).

[11]  *Id.* (quoting *Peninsula Mktg. Ass'n v. State*, 817 P.2d 917, 922 (Alaska 1991)).

[12]  *Id.* at 1143-44 (quoting *Peninsula Mktg. Ass'n*, 817 P.2d at 922).

[13]  *Brown v. State*, 404 P.3d 191, 193 (Alaska App. 2017) (quoting *Williams v. State*, 2015 WL 4599554, at *3 (Alaska App. July 29, 2015) (unpublished)).

[14]  *Williams v. State*, 853 P.2d 537, 538 (Alaska App. 1993).

[15]  FSSLA 2019, ch. 4, § 35. Other pre-existing provisions of the third-degree escape statute preclude (1) a person from removing themselves from official detention during any

escape if, while on release under AS 12.30, the person "removes, tampers with, or disables the electronic monitoring equipment," or (as relevant here), the person "without prior authorization, leaves [their] residence or other place designated by a judicial officer as a condition of release."[16] Before this provision was enacted, a person on pretrial release who tampered with their electronic monitoring device or left their residence without permission while on house arrest committed the crime of violating conditions of release, a class B misdemeanor.[17] As Riggs acknowledges, House Bill 49 elevated this conduct from the misdemeanor crime of violating conditions of release to the new class C felony set out in the third-degree escape statute.[18]

An early sectional analysis of the bill explained that the new provision would "make[] it a class C felony if the person is on conditions of release before trial and ordered to electronic monitoring or house arrest by the court and the person removes the electronic monitoring device or leaves one's residence without permission."[19] During the session, representatives of the Department of Law explained

lawful movement incident to confinement in a correctional facility for a misdemeanor, or (2) committing unlawful evasion and leaving, or attempting to leave, the state. AS 11.56.320(a)(1)-(2). In 2019, in House Bill 49, the legislature added the pretrial release provision at issue in this case, along with a provision precluding a person "under official detention for a misdemeanor" from (1) removing or tampering with electronic monitoring equipment, or (2) leaving a residence or other place designated by the commissioner of corrections or health and social services for service by electronic monitoring, without prior authorization. AS 11.56.320(a)(3)-(4).

[16]   AS 11.56.320(a)(4).

[17]   *See* former AS 11.56.757 (pre-July 2019 version). House Bill 49 elevated the crime of violating conditions of release to a class A misdemeanor if the person was on release for a felony. FSSLA 2019, ch. 4, § 38 (adding AS 11.56.757(b)(1)). It remains a class B misdemeanor for a person on release for a misdemeanor. AS 11.56.757(b)(2).

[18]   *See* AS 11.56.320(a)(4); Audio of House Judiciary Committee, H.B. 49, statement of Deputy Attorney General Robert Henderson, at 1:50 p.m. - 1:52 p.m. (Mar. 25, 2019).

[19]   Sectional Analysis for H.B. 49, prepared for the House Judiciary Committee (Feb. 20, 2019), at 1. A later bill summary more closely tracked the statutory language,

to the legislature that the provision was intended to increase the use of electronic monitoring, while ensuring that there was a substantial penalty, and thus a significant deterrent, for abusing or tampering with the monitor.[20]

There is no indication in the legislative history that a specific address, as opposed to house arrest in general, needs to be preapproved by the court. Nor is there any indication that the legislature intended to elevate violations of house arrest from a misdemeanor to a felony based on the technical line that Riggs's interpretation draws.

Indeed, the legislative history of the bill as a whole — including the original letter from the Governor transmitting the bill to the legislature and the legislature's statement of intent — highlights that one of the purposes of House Bill 49 was to find efficiencies in the criminal justice system.[21] Riggs's construction of the statute would undermine this purpose by requiring a defendant to return to court every time they sought to change addresses.

---

stating that the revised escape statute would make it a class C felony to "tamper or remove an electronic monitoring device or leave one's residence or other place designated by a court as a condition of release before trial." Bill Summary for C.S.H.B. 49, Version E, prepared by the Department of Law for the House Finance Committee (May 2019), at 2. The provision, as initially proposed by the Governor, remained unchanged through its final enactment. *Compare* C.S.H.B. 49, 31st Legislature, 1st Session, Version E (as introduced by the Senate Finance Committee, May 13, 2019), § 35, *with* AS 11.56.320(a)(4)(B).

[20] Audio of House Finance Committee, H.B. 49, statement of Criminal Division Director John Skidmore, at 12:36 p.m. - 12:39 p.m. (May 4, 2019); *see also* Audio of House Judiciary Committee, H.B. 49, statement of Deputy Attorney General Robert Henderson, at 1:52 p.m. - 1:54 p.m. (Mar. 25, 2019).

The escape statute does not require that a defendant be on electronic monitoring in order to violate the house arrest provision under AS 11.56.320(a)(4)(B) — although, as a practical matter, defendants often are.

[21] Transmittal Letter from Governor Dunleavy regarding H.B. 49 (Jan. 22, 2019) ("[I]t is critical that our criminal justice system is evaluated to improve processes and find efficiencies."); FSSLA 2019, ch. 4, § 1 ("It is the intent of the legislature that the Alaska Court System, the Department of Corrections, and the Department of Public Safety make continued efforts to find efficiencies in the criminal justice system[.]").

Certainly, a court could elect to specify an address for house arrest. But it is common for this responsibility to be delegated to a monitoring agency like ADM or the Department of Corrections's Pretrial Enforcement Division, which is able to visit and evaluate the residence. Requiring a judicial officer to approve a specific address in order for felony-level penalties to apply would therefore also undermine another focus of the provision and the bill — community safety — since a judicial officer, unlike a monitoring agency, cannot visit each proposed residence.

Riggs claims that the intent of the legislature was to "distinguish judicially designated house arrest from violating conditions of release where a judicial officer sets any other condition of release, including following the directions of a monitoring entity." But the legislative history shows that the intent was to increase the use of electronic monitoring by increasing the deterrents for tampering with an ankle monitor or leaving house arrest without permission. The distinction was between house arrest and other types of release conditions — not between house arrest when the address is set by the judge and house arrest when the address is set by the monitoring agency.

Ultimately, we are obliged to construe statutes in a manner that avoids patently absurd results or that would defeat the obvious legislative purpose of a statute.[22] Here, the key is not that the judicial officer has approved a *specific* address, but that the judicial officer has designated that a person remain on house arrest at *any* residence (subject to approval of the residence by the monitoring agency). There is nothing in the legislative history to suggest that the legislature was trying to change the logistics or practice with respect to electronic monitoring release or to limit felony escape to those narrow circumstances in which the judge directly reviewed and approved a residential address.

We therefore conclude that the evidence showing that the court ordered Riggs to house arrest, while delegating the determination of Riggs's specific address to

---

[22] *Williams v. State*, 853 P.2d 537, 538 (Alaska App. 1993).

ADM, constituted a sufficient judicial "designation" of the residence for purposes of third-degree escape under AS 11.56.320(a)(4)(B). Accordingly, we reject Riggs's claim that the evidence was insufficient to support his conviction.

### *Why we uphold the superior court's rejection of Riggs's request for a lesser included offense instruction on violating conditions of release*

Riggs's second claim is that the superior court erred in refusing to instruct the jury on his proposed lesser included offense of violating conditions of release.

After the close of evidence, Riggs asked the court to instruct the jury on the offense of violating conditions of release.[23] A person commits the crime of violating conditions of release "if the person (1) has been charged with a crime or convicted of a crime; (2) has been released under AS 12.30; and (3) violates a condition of release imposed by a judicial officer under AS 12.30" (other than the requirement to appear).[24]

The court expressed concern about Riggs's proposal. The court suggested that, under the facts of this case, there was no way to distinguish the two offenses — *i.e.*, there were no grounds for the jury to acquit Riggs of escape but convict him of violating conditions of release.[25]

---

[23]  AS 11.56.757.

[24]  AS 11.56.757(a).

[25]  The court also initially noted that, as compared to the escape statute, the offense of violating conditions of release contained an additional element — that Riggs had been charged with a crime — and the State had not introduced evidence that Riggs had been charged with a crime. The court acknowledged that, as a practical matter, a defendant would not be on bail release (an element of escape) without having been charged with a crime. (There is an exception to this general rule: a material witness may be released or detained under the provisions of AS 12.30.011. See AS 12.30.050.) Riggs offered to stipulate to the element of violating conditions of release that he had been charged with a crime, but the State opposed this proposal. The superior court ultimately moved on to another issue and did not rest its denial of the violating conditions of release instruction on the additional requirement that Riggs had been charged with a crime. We conclude that,

The court asked Riggs's attorney to explain the subset of facts that would establish violating conditions of release without also establishing third-degree escape. In response, defense counsel maintained that Riggs believed he had permission to be at work at the times he was there (and thus, did not recklessly disregard his lack of prior authorization); he therefore could not be found guilty of escape for those incidents. He argued that, in other instances, where the State alleged that Riggs had made an unauthorized stop on the way home from work, the jury could find that these incidents were mere "deviations" that constituted violating conditions of release but did not constitute third-degree escape for leaving one's residence.

The superior court rejected these arguments and concluded that there was no distinction between third-degree escape and violating conditions of release under the facts in Riggs's case. The court stated that the State's theory of the case was an "all-or-nothing argument" — *any* deviation from Riggs's approved work schedule was an escape because he was supposed to go directly to and from work and otherwise be at his residence. The court therefore denied Riggs's request for an instruction on the offense of violating conditions of release.

Riggs now challenges the superior court's denial of his requested instruction.

Under Alaska's cognate approach to lesser included offenses, a defendant is entitled to a lesser included offense instruction when, based on the evidence presented at trial, a conviction of the charged offense would be inconsistent with acquittal of a lesser offense, and there is a disputed element that distinguishes the charged offense

under the facts of this case (where Riggs was clearly charged with a crime and released on bail), this would not be a basis to distinguish the two offenses.

from the lesser offense.[26] The evidence must "support a reasonable conclusion that the defendant is guilty of *only* the lesser offense and not the charged offense."[27]

Under the facts of Riggs's case, third-degree escape was an enhanced version of violating conditions of release. A person commits the offense of violating conditions of release when they violate *any* condition of their release (other than the requirement to appear).[28] In amending the third-degree escape statute in 2019, the legislature chose to elevate the violation of *particular* conditions of release to a felony. Because Riggs was only charged with violating one of these particular conditions of release — *i.e.*, leaving his residence without prior authorization while on pretrial house arrest — there is no way that he could be found guilty of third-degree escape without also being found guilty of violating conditions of release.

At the same time, however, under the evidence and theories presented, there was no basis for a juror to find that Riggs was guilty of *only* the lesser offense and not the charged offense. Indeed, the jury instruction on violating conditions of release that Riggs proposed was not meaningfully different from the instruction on third-degree escape given by the superior court.

The legislature is ultimately responsible for determining the classification and penalties for a given offense. Unless Riggs disputed a fact that elevated violating

---

[26]  *Moore v. State*, 740 P.2d 472, 473-74 (Alaska App. 1987).

[27]  *Geisinger v. State*, 498 P.3d 92, 103 (Alaska App. 2021) (emphasis added); *see also Wilson v. State*, 670 P.2d 1149, 1151 (Alaska App. 1983) (recognizing that, to be entitled to a lesser included offense instruction, there must be "some evidence which could lead a reasonable jury to find that the element which distinguishes the greater offense from the lesser has not been proved").

[28]  AS 11.56.757.

conditions of release to escape (*e.g.*, that the court ordered him to house arrest), there was nothing to distinguish these offenses.[29]

On appeal, Riggs's arguments in support of the instruction on violating conditions of release are relatively conclusory. As best we can tell, he appears to be renewing the arguments he raised in the superior court. That is, we interpret Riggs to be arguing that (1) as to the incidents where he was alleged to have left directly from his residence without permission, the jury could conclude that he was not reckless with respect to his lack of prior authorization to do so, and (2) as to the incidents where he was alleged to have deviated from his approved route between work and home without permission, these incidents did not constitute "leaving one's residence" but merely constituted violating conditions of release.[30]

Riggs's arguments implicate an underlying legal issue: whether the escape statute includes mere "deviations" from the approved route to and from an authorized workplace if the defendant otherwise had permission to leave their residence, or if the statute is limited to those situations in which a defendant actually departs (*i.e.*, "leaves") their residence without prior authorization. Any deviation from the approved route would clearly violate Riggs's signed contract with ADM, which provided that he would go directly to and from his workplace. It would seemingly also violate the court's bail

---

[29] The third-degree escape statute is not the only instance in which the legislature has chosen to elevate a particular form of a misdemeanor offense to a greater felony offense. For example, the unsworn falsification statutes present an analogous situation. Second-degree unsworn falsification is elevated from a misdemeanor to the class C felony of first-degree unsworn falsification when the application on which a person submits a false written or recorded statement is an application for a permanent fund dividend. *Compare* AS 11.56.205 *with* AS 11.56.210.

[30] Riggs also argues that the jury could find that he had "prior authorization under the escape statute but violated his conditions of release by not adhering to ADM's flexible approval process." It is not clear what Riggs means by this, or what incidents he is referring to, and he did not raise this argument nor draw out these distinctions in his argument before the superior court. To the extent Riggs is raising this as a separate argument, it is waived.

order, which required Riggs to be on house arrest and authorized him to leave the residence only for limited purposes, including work. But Riggs appears to argue that a deviation from an approved route would not constitute "leav[ing] one's residence" within the meaning of the escape statute.

To the extent Riggs is raising this argument, we question it. While the plain language of the escape statute suggests that it is limited to situations in which a person exited their residence or "other place" (*e.g.*, workplace) at a time when they had no prior authorization to do so, this is an overly formalistic interpretation of the statute, and we doubt it was the legislature's intention for this provision to be read so narrowly. As we have explained, the legislative intent in enacting the new third-degree escape provision was to increase the use of electronic monitoring by elevating the penalty for tampering with one's electronic monitor and thus increase the community's comfort level with this form of release.[31] This purpose would not be achieved if the imposition of felony-level consequences turned on the somewhat arbitrary ground of whether a person departed their residence at an unauthorized time or for an unauthorized purpose, or whether the person was engaging in any unauthorized activity or visiting an unapproved location outside of the home. In both cases, at that moment in time, the person is away from the home without prior authorization.[32]

But in any event, we note that there were multiple incidents alleged by the State which fell within the core meaning of "leaving" one's residence and did not constitute the type of mere "deviation" to which Riggs is referring (*i.e.*, making an

---

[31] *See* Audio of House Finance Committee, H.B. 49, statement of Criminal Division Director John Skidmore, at 12:36 p.m. - 12:39 p.m. (May 4, 2019).

[32] We note, too, that although the superior court deleted the statutory language, "or other place designated by a judicial officer," from the jury instruction in this case, the statute itself is not limited to leaving one's residence, but also includes leaving any other judicially designated place without prior authorization.

unauthorized deviation from a preapproved route).[33] In light of these incidents, all charged in a single count, there was little chance that the jury would convict Riggs of violating conditions of release, but not escape.[34]

We therefore reject Riggs's claim that the superior court erred in rejecting his request for an instruction on violating conditions of release.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[33] For example, the State alleged that, on August 24, 2021, Riggs left his residence without permission and went to an unauthorized location (his mother's house); on August 25, he left his residence without permission and went to another unauthorized location (the address to which Eagle Automotive was planning to move) and then back home; and that, again on August 25, he left his residence to go to Eagle Automotive outside of his authorized hours. These movements are reflected in Exhibit 3, which was a log of Riggs's GPS locations over the relevant days in August 2021. Hamby testified that Riggs did not have authorization for these visits.

Riggs's visit to McDonald's on August 25, for which he offered no explanation in his testimony, also falls into this category. Although defense counsel indicated in her argument to the superior court that Riggs stopped at McDonald's on the way home from work, Exhibit 3 contradicts this claim, reflecting that Riggs went from his home to McDonald's and back.

[34] *See Geisinger v. State*, 498 P.3d 92, 103 (Alaska App. 2021) (recognizing that, under Alaska law, a lesser offense is "included" in a greater offense, given the way the case was charged and litigated, if, *inter alia*, "the evidence would support a reasonable conclusion that the defendant is guilty of only the lesser offense and not the charged offense").